## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| **STEPHEN CAUDLE,** | **2:19-CV-11445-TGB-MKM** |
| Plaintiff, | |
| vs. | **ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| **HARD DRIVE EXPRESS, INC., and JAMES BETZ,** | |
| Defendants. | |

In this case, truck driver and Plaintiff, Stephen Caudle, is suing the trucking company he worked for and its owner, Defendants Hard Drive Express and James Betz, for allegedly firing him in retaliation for threatening to report them for unpaid wages in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* and Michigan's Whistleblowers' Protection Act ("WPA").

Defendants have moved for Summary Judgment, contending that Plaintiff is not entitled to the compensation sought and denying that his claims are protected under the FLSA or Michigan's WPA. ECF No. 37. For the reasons explained below, Defendant's Motion for Summary Judgment is well taken.  Therefore, the motion will be **GRANTED** and the case **DISMISSED** with prejudice.

1

# I.    INTRODUCTION

Caudle began working as a truck driver for Defendant Hard Drive Express, Inc. ("Hard Drive") on August 24, 2015. ECF No. 5, PageID.17. Caudle alleges that during his employment, he was often required to make and pay for repairs to Hard Drive's vehicles at his own expense and was never reimbursed for such expenses or the extra time spent in obtaining parts. *Id.* at PageID.17-18. Caudle contends that he raised these concerns with Defendant James Betz, the owner of Hard Drive, throughout his employment. *Id.*

On February 15, 2019, Caudle raised another concern regarding pay-related issues that resulted in a heated exchange, and ultimately his termination from the Company. In a text, Caudle asked Betz about "vacation pay" and the process for requesting paid time off. ECF No. 37-17. Betz informed Caudle that he "[m]ust fill out [a] vacation request form 30 days in advance" . . . and "work the 2 weeks before vacation and the 2 weeks after vacation in order to receive [] paid days off pay. It is not called vacation." *Id.* at PageID.544.  In response, Caudle texted, "You get it for me and sick as well right . . . Never mind buddy I'm not gonna play any games with you. I had text first two weeks of March off my wife's getting operated on[.]" *Id.* Betz replied, "However you want to use it. It will not be paid until you work 2 full weeks after. Not letting anyone pull any tricks. According to the labor department, I'm giving this as a gift and I do not have to pay if an employee tries to pull a fast one." *Id.* Betz then

2

reminded Caudle that he "make[s] loans with no interest and [is] still [required] to pay to have something done for the truck." *Id*. at PageID.544. Caudle replied, "That's right . . . I'll get my money don't worry about it[,] I'm not gonna argue with you[.] I'll go to the proper channels[.] I've been down this road before[.] I've let it go because things are going pretty good but you're the [one that] want[s] to change not me." *Id*. at PageID.544. When Betz asked Caudle if he could call, Caudle informed Betz he had "10 minutes" because he was "on [the] way to the labor board" and "done playing with [him]." *Id*. Caudle warned Betz, that if they could work it out over the phone "Pandora's box" wouldn't open. *Id*. Seemingly unmoved by Caudle's warning, Betz informed Caudle, "There is absolutely nothing in the laws that says I have to give you paid days off . . . You have been paid every nickel that you earn. . . Park the [truck]. . ." *Id*.

Caudle alleges that in retaliation, Betz terminated him for threatening to report the alleged violations to the labor board. ECF No. 5, PageID.18. Plaintiff's amended complaint alleges one count of retaliation under the FLSA and one count alleging a violation of Michigan's WPA. ECF No. 5. On August 21, 2020, this Court denied Defendants' Motion for Leave to File Counterclaim (ECF No. 22) and granted Defendants' Motion for Leave to File Amended Affirmative Defenses (ECF No. 26). On February 8, 2021, Defendants moved for summary judgment. ECF No. 37.

3

## II.   LEGAL STANDARD

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact such that the movant is entitled to a judgment as a matter of law." *Villegas v. Metro. Gov't of Nashville*, 709 F.3d 563, 568 (6th Cir. 2013); *see also* Fed. R. Civ. P. 56(a). A fact is material only if it might affect the outcome of the case under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

On a motion for summary judgment, the Court must view the evidence, and any reasonable inferences drawn from the evidence, in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted); *Redding v. St. Eward*, 241 F.3d 530, 531 (6th Cir. 2001).

The moving party has the initial burden of demonstrating an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party carries this burden, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348. The trial court is not required to "search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989). Rather, the "nonmoving party has an affirmative duty to direct the court's attention

to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 655 (6th Cir. 2001). The Court must then determine whether the evidence presents a sufficient factual disagreement to require submission of the challenged claims to the trier of fact or whether the moving party must prevail as a matter of law. *See Anderson*, 477 U.S. at 252.

### III.   DISCUSSION

### A. Plaintiff is an employee protected under the Fair Labor Standards Act (FLSA) and also under the Motor Carrier Act (MCA) for overtime wages.

The FLSA mandates the payment of minimum wage and overtime compensation to covered employees. Section 6(a) provides that every employer, as defined in the Act, "shall pay to each of his employees" wages not less than the specified minimum rate; § 7(a)(1) prohibits employment of any employee in excess of 40 hours per week "unless such employee receives compensation" at a rate of not less than one and one-half times the employee's regular rate. *Citicorp Indus. Credit, Inc. v. Brock,* 483 U.S. 27, 32–33 (1987). However, the FLSA provides an overtime exemption for "any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to [the Motor Carrier Act]." 29 U.S.C. § 213(b)(1). The Motor Carrier Act ("MCA") has "vested in the Interstate Commerce Commission power to establish reasonable requirements with respect to qualifications and maximum hours of

service of employees and safety of operation and equipment of common and contract carriers by motor vehicle. s 204(a)(1)(2)." *Levinson v. Spector Motor Serv.*, 330 U.S. 649, 658 (1947).

A "covered employer" under the FSLA is an employer who:

(i)  has employees engaged in commerce or in the production of goods for commerce, or has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and

(ii)  is an enterprise whose annual gross volume of sales made or business done is not less than $500,000 . . .

29 U.S.C. § 203(s)(l)(A). Plaintiff alleges that Hard Drive meets both elements of this definition, and Defendants do not disagree. ECF No. 38, PageID.708.  Neither party disputes that for the purposes of the MCA, Plaintiff was a driver in interstate commerce subject to the regulations and jurisdiction of that Act. However, the parties are split on whether falling under the MCA precludes application of the protections under the FLSA.

Defendants claim "the MCA exemption prevents the Secretary of Labor and the Secretary of Transportation from both having concurrent jurisdiction over motor carriers with regard to wages and hours." ECF No. 37, PageID.364 (citing 29 U.S.C. § 213(b)(1) ("FLSA wage provisions do not apply to 'any employee with respect to whom the DOT has the power to establish qualifications and maximum hours of service pursuant to the provisions of Section 204 of the Motor Carrier Act (MCA) of 1935 [40 U.S.C.S. s31502].'"))

6

In support of their argument, Defendants cite to *Levinson v. Specter Motor Svc.*, 330 U.S. 649, 661-62 (1947), where the Supreme Court held that Congress could have allowed overlapping jurisdiction between the Interstate Commerce Commission ("Commission") and United States Department of Labor ("DOL") but declined to do so. ECF No. 37, PageID.364. Accordingly, Defendants argue, "courts must give this separation of authority its intended effect." *Id*. Defendants also cite to *Spires v. Ben Hill County*, 980 F.2s 683, 686 (11th Cir. 1993) (Congress created the MCA to eliminate any conflict between the DOL over the FLSA and the mutually exclusive jurisdiction exercised by the DOT over the MCA).

In *Levinson*, defendant company challenged plaintiff's request for overtime wages. On cert, the Supreme Court had to determine whether the Commission had the power, under § 204 of the MCA, to establish qualifications and maximum hours of service with respect to plaintiff, an employee whose duties only partially involved directing the work of "loaders" of freight for an interstate motor carrier. Because plaintiff's 'activities affected the safety of operation,' the definition of employee under § 204(a)(1) and (2), (see *United States v. American Trucking Ass'ns*, 310 U.S. 534 (1940)) the Supreme Court concluded the Commission had the jurisdiction to regulate the qualifications and hours of service of the employee, and thus the overtime protections under § 7 of the FLSA did not apply.

7

In justifying its conclusion, the Supreme Court discussed the jurisdictional relationship between the DOL and Commission. The Court stressed that a primary purpose of the MCA is to preserve and develop a safety program for motor carriers. "To do so, Congress prohibited the overlapping of the jurisdiction of the Administrator of the Wage and Hour Division, [DOL], with that of the [Commission] as to maximum hours of service." *Levinson*, 330 U.S. at 661 (1947) (emphasis added).

Defendants misapply *Levinson*, attempting to argue that MCA jurisdiction over motor carriers is exclusive in *all respects*. But *Levinson* only supports that the Commission pursuant to the MCA has the power to "establish reasonable requirements **with respect to qualifications and maximum hours of service** of employees and safety of operation and equipment of common and contract carriers by motor vehicle. § 204(a)(1)(2)." *Levinson*, 330 U.S. at 658 (emphasis added). And that the "Fair Labor Standards Act therefore, expressly excludes any such employee from a right to the increased pay **for overtime service prescribed by s 7 of that Act***." *Levinson*, 330 U.S. at 653 (emphasis added).

Therefore, the Court agrees with Plaintiff that MCA jurisdiction over wages and hours does not obviate other FLSA protections; it merely permits the DOT to prescribe wage and hours guidelines that are appropriate for employers and employees involved in transporting services via interstate commerce. *See* Opinion Letter Fair Labor

8

Standards Act (FLSA), 1981 WL 179034 (where automobile mechanics had to be paid minimum wage, despite exemption from the overtime compensation requirements under the FLSA 13(b)(10), similar to truck drivers' exemption promulgated under FLSA 13(b)(1)); *See also Davis v. Colonial Freight Sys., Inc.*, 2017 WL 11572196 at*6 (E.D. Tenn. Nov. 22, 2017) (applying FLSA minimum wage requirements to commercial truck driver plaintiff). Consequently, truck drivers are also protected by the FLSA retaliatory firing provision. *See Cedano v. Alexim Trading Corp.,* 2011 WL 5239592 at *5 (S.D. Fla. Nov. 1, 2011) ("Plaintiffs have shown that they are entitled to the retaliatory firing protections of the FLSA despite their exemption from the overtime provisions of that Act."). *Schaeffer v. Warren County,* No. 3:14cv945-DPJ-FKB, 2016 BL 176300 (S.D. Miss. June 02, 2016) ("On its face, § 213(b)(6) merely exempts a subset of employees from overtime pay under § 207—it does not exempt an 'employee' from any other FLSA provision and makes no reference to retaliation claims under § 215(a)(3).").

Here, Plaintiff has acknowledged that although the MCA precludes him from bringing an *overtime* claim, he is not exempt from any other FLSA provisions. He fits the definition of an employee, and as such is covered by the FLSA anti-retaliation provision. ECF No. 38, PageID.709-10.

**B. There is no genuine issue of material fact whether Plaintiff can establish a retaliation claim.**

The anti-retaliation provision of the FLSA states that "it shall be unlawful for any person . . . to discharge or in any other manner discriminate against an employee because such employee has filed any complaint . . . under or related to this [Act]." 29 U.S.C. § 215(a)(3).  A plaintiff establishes a prima facie case of retaliation by showing:

(1) he or she engaged in a protected activity under the FLSA;

(2) his or her exercise of this right was known by the employer;

(3) thereafter, the employer took an employment action adverse to [him]; and

(4) there was a causal connection between the protected activity and the adverse employment action.

*Adair v. Charter Cnty. of Wayne*, 452 F.3d 482, 489 (6th Cir.2006).

Because Plaintiff has not produced direct evidence of Defendant's retaliatory motive for his discharge, he must proceed under the burden-shifting approach articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824 (1973). *See Adair v. Charter County of Wayne*, 452 F.3d 482, 489 (6th Cir. 2006). If Plaintiff establishes the elements of a prima facie case of retaliation, the burden of production shifts to Defendants to articulate a legitimate, non-retaliatory reason for the termination. *Dixon v. Gonzales,* 481 F.3d 324, 333 (6th Cir.2007). If Defendants satisfy the burden of production, the burden shifts back to the Plaintiff to show that the reason was a

pretext for retaliation. *Id.* "Although the burden of production shifts between the parties, the plaintiff bears the burden of persuasion throughout the process." *Id.*

Plaintiff alleges (1) he engaged in protected activity by asserting his rights under FLSA on "numerous occasions" to Defendant Betz and when he "threatened to go to the 'labor board'" to enforce his rights to unpaid wages; (2) Defendant Betz knew Plaintiff intended to report the "suspected violations" based upon his statement that he was on his way to the labor board; (3) Defendants terminated him; and (4) the termination occurred immediately after he threatened to go to the labor board regarding his pay issues because Defendant Betz viewed his statement as a threat. ECF No. 5, PageID.18-19.

### a. Protected activity

As Defendants note, it is true that "not every complaint . . . can trigger protection under anti-retaliation provisions." ECF No. 37, PageID.370. FLSA "protected activity" includes informal, internal complaints regarding pay, wages, and hours, both written and oral. *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1 (2011); *Moore v. Freeman*, 355 F.3d 558, 562 (6th Cir. 2004). And as Plaintiff correctly points out, "it is only necessary for plaintiffs to make good faith claims to establish a prima facie case, not that those claims ultimately be successful under the FLSA." *Morris v. Aon Serv. Corp.*, No. 10-14620; 2011 WL 5864757 (E.D. Mich. Nov. 22, 2011).

Defendants concede that Plaintiff had been complaining as early as 2017 about allegedly unpaid services or non-reimbursement of out-of-pocket expenses and had threatened to report Hard Drive before. ECF No. 37, PageID.348. (citing Dep. of Betz, ECF No. 37-3, PageID.441,425-27). However, Defendants claim that these allegations are not viable under the FLSA or WPA for wage violations because unreimbursed expenses are not protected under the FLSA or applicable state regulations, stating "Plaintiff has not offered any authority for coverage under the FLSA generally, or its anti-retaliatory provisions, for a driver subject to a DOT regulation." ECF No. 37, PageID.351. Therefore, so long as there is no minimum wage violation, Plaintiff has no viable claim under the FLSA or WPA for wage violations. ECF No. 41, PageID.1093. However, "[t]hese arguments are more germane to the issue of notice." *Morris v. Aon Serv. Corp.*, 2011 WL 5864757 (E.D. Mich. Nov. 22, 2011).

The only issue here is whether Caudle made a good faith complaint and reasonably believed he had a minimum wage violation claim under the FLSA. Although Caudle admits he was paid minimum wage for all of his regular work hours, he contests that he was paid minimum wage for *all* hours. ECF No. 38, PageID.690. Given that Caudle has made informal complaints related to pay and wages since 2017, and taking the facts in the light most favorable to Plaintiff as the non-moving party, it can be reasonably inferred that Caudle engaged in protected activity.

### b. Notice

Even where plaintiff makes a good faith complaint, to establish a prima facie claim, defendant must be on notice that a violation of a protected right has occurred. The Supreme Court has established that a complaint must be "sufficiently clear and detailed for a reasonable employer to understand it . . . as an assertion of rights protected by the statute and a call for their protection." *Kasten*, 563 U.S. at 14. This rule "contemplates some degree of formality" in the oral complaint such that "the recipient has been given fair notice that a grievance has been lodged and does, or should, reasonably understand the matter as part of its business concerns." *Katsen*, 563 U.S. at 14. "[A]n employee does not make a 'complaint' within the meaning of the FLSA's anti-retaliation provision merely by 'letting off steam,' but instead must give the recipient of the complaint 'fair notice that a grievance has been lodged." *Nevill v. MidMichigan Visiting Nurse Ass'n*, 2019 WL 4891190, at *8 (E.D. Mich. Aug. 14, 2019) (quoting *Kasten*, 563 U.S. at 14; *see also Valerio v. Putnam Associates, Inc.,* 173 F.3d 35, 44 (1st Cir. 1999) ("[N]ot all abstract grumblings will suffice to constitute the filing of a complaint with one's employer."). "[T]he question is whether [Plaintiff's] complaint . . . may reasonably be understood as implicating the particular employee rights and compensation practices covered by the FLSA, such that it provided fair notice to Defendant that its compliance with this statute was being called into question." *Id.*

13

On February 15, 2019, Caudle texted Betz inquiring about the procedure for requesting paid time off (PTO). ECF No. 37-17, PageID.543. When Betz informed Caudle that the PTO policy required that he work two weeks before and two weeks after the proposed paid time off period to receive his vacation pay, Caudle responded that he would "go to the proper channels" to get his money and that he was "on [his] way to the labor board." ECF No. 37-17, PageID.544.  Defendants assert that Betz understood Caudle's threat to report to the labor board related to their disagreement concerning the Company's PTO policy and his request for vacation pay. ECF No. 37, PageID.350-51.  As support, Defendants point to the fact that Betz offered to meet Caudle at either the Michigan or Ohio labor board, both state agencies, because PTO policies are not governed by federal regulations. ECF No. 37, PageID.370. (citing ECF No. 37-17, PageID.546). Indeed, when Caudle threatened to go to the labor board, Betz responded, "[There] is absolutely nothing in the laws that says I have to give you paid days off. Why do you think I [set] it up the way I did, so employees can't screw me. You have been paid every nickel that you earn." ECF No. 37-17, PageID.544.  He then instructed Plaintiff to park the truck and reminded him that Michigan is an at-will state. *Id.*

Based upon this short dialogue, it appears that at the time Betz fired Plaintiff, he understood Plaintiff to be threatening to report Defendant for failing to provide him paid time off.  It is not until *after*

Betz orders Caudle to park the truck that Caudle threatens to tell the rest of Defendants' employees that the labor law requires that employees be paid for servicing trucks and attempts to clarify that their "conversation had nothing to do with getting pa[id] for days off." *Id.*

Although the conversation also includes a reference to being paid for servicing trucks, the initial text thread begins with Plaintiff inquiring about vacation pay, not the alleged unreimbursed expenses. Once Caudle threatened to report Betz, Betz reminded Caudle that the same way employees are expected to comply with the PTO policy, he has to pay employees to service trucks even though he often loans them money with no interest. *Id.* at PageID.544. It is clear that the two have a disgruntled history related to reimbursement of expenses, but at the time when Caudle threatens to report Betz to the labor board, the topic being discussed is vacation pay; it is Betz who brings up his frustrations with having to pay employees to service the trucks. Caudle attempts to conflate the two issues—failure to pay for out-of-pocket expenses and failure to receive vacation pay—but it is clear from the record that when Caudle refers to getting his "money" he is initially referring to his entitlement to vacation pay.

If Caudle had referred to unreimbursed expenses at the time he threatened to go to labor board, it would be reasonable to infer that he had sufficiently given Betz notice that he was about to report a suspected FLSA violation. Not only does the FLSA require employers to pay at least

a specified minimum wage for each hour worked, but such wages must be "free and clear." 29 C.F.R. § 531.35. Therefore, FLSA protections may be implicated where unreimbursed business expenses bring an employee's wages below the applicable minimum wage. Whether Caudle had proof of these unreimbursed expenses or whether the expenses actually would total enough to diminish his wages below the federal minimum wage would be a question for the trier of fact. However, that is not the case here. Unlike in *Morris v. Aon Serv. Corp.*, where plaintiff made external complaints to the Wage and Hour Division and made numerous internal complaints, one of which cited penalties under the FLSA, Caudle's complaints prior to February 15, 2019, do not appear to be more than mere grumblings. Plaintiff offers no records showing evidence of unreimbursed expenses by Defendant, despite alleging he has been making complaints related to underpaid wages since 2017. In fact, history indicates that Plaintiff has been lightly chastised in the past for failing to submit receipts for reimbursement in accordance with Company guidelines.[1] Based upon the record, Caudle's complaint immediately prior to being terminated related only to his entitlement to vacation pay, a fringe benefit not protected under the FLSA. Therefore,

---

[1] Pawlos emailed Caudle: "[I]f you put your receipts in your envelope you shouldn't lose them. Hopefully this kind of mess won't happen again. If you aren't more careful I'm gonna start calling you Steve Swanson." ECF No. 41-5.

16

the second prong for establishing a prima facie case for retaliation has not been met.

### c. *Adverse Action*

Defendants also deny that Caudle suffered any adverse action, providing evidence that suggests Caudle had already accepted a new job from a freight consolidator named Cardinal Logistics ("Cardinal"). ECF No. 37, PageID.371; ECF No. 37-18. In other words, "[a] reasonable trier of fact could not find Plaintiff was on the 'verge of reporting' and would have continued at Hard Drive had he not been terminated." ECF No. 41, PageID.1098. Caudle disputes this assertion, contending that the same day he was fired he reached out to apply as a driver at Rio Transport ("Rio"), via Cardinal, and that he had to wait over a month to be hired because Betz refused to turn over Caudle's driver qualification file that he had requested in January. ECF No. 38, PageID.695. However, the qualification file appears to have been signed by Karol Pawlos, Hard Drive's personnel manager, on January 17, 2019. ECF No. 37-13.  On the same day that Plaintiff threatened to report Defendants to the labor board, administrative email correspondence between Cardinal managers indicates that the paperwork for hiring Caudle had already commenced. ECF No. 37-18, PageID.550. Moreover, Cardinal records indicate Plaintiff was on the company's payroll as a driver as of March 3, 2019, approximately 2 weeks after he left Hard Drive. ECF No. 37-19. But regardless of Caudle's exact employment status at Cardinal on the date

of termination, it is undisputed that their business relationship had come to an end at the point Betz instructed Caudle to park his truck. Therefore, Plaintiff has satisfied the third prong.

### d. Causation

"[T]he Sixth Circuit has held that '[w]here an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation.'" *Nevill*, 2019 WL 4891190, at *9 (quoting *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008); *see also Johnson v. Fifth Third Bank*, 685 F. App'x 379, 385 (6th Cir. April 5, 2017); *Bryson v. Regis Corp.,* 498 F.3d 561, 571 (6th Cir. 2007)).

Immediately after Betz received the threat, he instructed Caudle to "park the [] driver [] truck" and informed Caudle that "Michigan is an at will state. That means I can get rid of someone for any reason." ECF No. 37-17, PageID.544. Betz denies that the threats prompted Plaintiff's termination and did not consider Caudle's texts as a threat (ECF No. 38-3, PageID.796), but the text messages indicate otherwise. *See* for example, ECF No. 37-17, PageID.545 ("After your threats, I don't trust you."). During the October 27, 2021 oral argument on the motion, Defendants' counsel conceded that Betz's instructions indicated Plaintiff was fired. If not for the fact that Caudle has not met the notice

18

requirement, the proximity between Caudle's threat and his termination would satisfy the fourth prong.

While a trier of fact could reasonably infer that Caudle engaged in protected activity beginning as early as 2017 regarding unreimbursed expenses, the record indicates that at the time of termination, Caudle had only presented the issue of vacation pay, a fringe benefit not protected under FLSA provisions, and thus not sufficient to meet the notice requirement. Because Plaintiff has not established a prima facie case of FLSA retaliation, the Court need not assess whether Defendant can identify a legitimate, non-retaliatory reason for the adverse actions taken against Plaintiff, up to and including the termination of his employment. *See Adair v. Charter Cty. of Wayne*, 452 F.3d 482, 489 (6th Cir. 2006).

## C. There is no genuine issue of material fact whether Plaintiff can establish a retaliation claim under Michigan's WPA.

The Michigan Whistleblowers' Protection Act (WPA) prohibits employers from firing an employee "because the employee . . . reports or is about to report . . . a violation or a suspected violation of a law . . . to a public body." Mich. Comp. Laws § 15.362. To establish a prima facie case under Michigan's WPA a plaintiff must show that she (1) engaged in a protected activity during those times that have been referenced in the complaint, (2) was subjected to the claimed act of discrimination or

discharge, and (3) the protected activity caused the discharge or adverse employment action. *Fritze v. Nexstar Broad*., Inc., 847 F. App'x 312, 314 (6th Cir. 2021).

For the same reason Caudle's retaliation claim should be denied, so should Caudle's claim for relief under Michigan's WPA. Caudle alleges Hard Drive terminated him because Betz knew he intended to report the "suspected violations of law to a state agency, and/or to the Department of Labor, which are public bodies defined under the [WPA]." ECF No. 5, PageID.19. And that Betz was aware of his intent to report the suspected violations based upon his statement that he was on his way to the labor board. *Id*.

At the outset, Caudle's claim fails because he did not engage in activity protected under Michigan's WPA. This Court has determined that at the point in which Betz fired Caudle, Caudle's threat related to receiving unpaid wages for vacation pay. Michigan law does not regulate fringe benefits and as such, there is no suspected violation of law. *See Fritze*, 847 F. App'x at 314 (internal citations omitted) ("An employer's failure to follow internal rules or procedures does not amount to a violation of law, unless the internal rule or regulation has been 'promulgated pursuant to the law.'"). At best, this is a breach of contract

claim. And Caudle has not alleged that Betz violated or failed to comply with its Company's PTO policy.[2]

## IV.   CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is **GRANTED** and this case is **DISMISSED** with prejudice.

**IT IS SO ORDERED.**

Dated:February 24, 2022   s/Terrence G. Berg
                          TERRENCE G. BERG
                          UNITED STATES DISTRICT JUDGE

---

[2] In an email dated January 18, 2019, Pawlos emailed employees that as of January 1, all truck drivers would be entitled to 5 days of vacation pay, provided they worked 2 weeks prior and two weeks after to collect. ECF No. 37-14.

21